UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAYLOR    CASEY,    AUDRA    AWAI,
CLIFFORD  KLEIN,  JOYCELYN  STINSON,
MELISSA  SHIPMAN,  AMY  KISZ,  and
CHRISTOPHER  WICKERSHAM  JR.,  on
behalf of themselves and all others similarly
situated,

       Plaintiffs,                                                 Case No:  3:14-cv-1229-J-39PDB

v.

FLORIDA  COASTAL  SCHOOL  OF  LAW,
INC.,

       Defendant.

_____

## AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL[1]

Plaintiffs, acting for themselves and for all persons who currently attend or graduated

from the Florida Coastal School of Law during the relevant time period (collectively

"Plaintiffs"), allege as follows.  Plaintiffs' allegations are based on the investigation of counsel,

including but not limited to reviews of advertising and marketing material, various publicly

available information and interviews of former students, and are thus made on information and

belief, except as to individual actions of Plaintiffs, as to which Plaintiffs have personal

knowledge.  Upon information and belief, at all material times relevant to the allegations of this

Complaint, members of the putative class members are spread throughout all fifty states and are

---

[1] Revised pursuant to this Court's Order Granting in Part Plaintiffs' Amended Unopposed Motion to Amend
Complaint dated November 20, 2014 [ECF No. 69].

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

current or former students of the Florida Coastal School of Law, Inc. ("Florida Coastal" or "Defendant").

## PRELIMINARY STATEMENT

1.      Florida Coastal is a private institution owned by a large for-profit education investment fund, InfiLaw Corp., which also owns and operates two other for-profit law schools, and, in turn, is owned by Sterling Partners, a Chicago private equity firm with nearly $4 billion under management.  The school first opened in 1996 and was formally accredited by the American Bar Association ("ABA") in 2002.  Currently, it enrolls over 1,700 students, making it one of the largest law schools in the country, while it has some of the lowest admissions standards for any accredited law school, admitting nearly 70 percent of all applicants.

2.      Florida Coastal has misrepresented its employment statistics to prospective students with faulty accounting techniques.  These deceptive actions were made to prevent prospective students from realizing that attending Florida Coastal and paying high tuition is a bad investment that is unlikely to bear fruit.

3.      Specifically, Florida Coastal, through both print and internet marketing materials it produced and disseminated, makes **two uniform, written misrepresentations**:

        a)      That, depending on the year, between 80 and 95 percent of its graduates secured employment within nine months of graduation.  The context of these representations makes it appear to reasonable consumers, such as Plaintiffs, that the jobs reported are <u>full-time, permanent positions for which a law degree is required or preferred.</u>  However, Florida Coastal's reported employment numbers include *any* type of employment, including jobs that have

absolutely nothing to do with the legal industry, do not require a JD degree, or are temporary, part-time or voluntary in nature.

b)      Florida Coastal inflates its graduates' reported mean/median salaries by calculating them based on a small subset of graduates who actually submit their salary information and are high earners.  Only 23 percent of the 2009 class reported any type of salary information.

4.      Prospective students are unable to find Florida Coastal's actual or "real" employment numbers.

5.      Further, Florida Coastal's representations are demonstrably false for the following reasons:

a)      Upon information and belief, Florida Coastal's employment reports for the classes of 2011, 2012, and 2013 are inflated since they are based on unaudited, unverified, self-reported raw data and include graduates in solo positions who earn little if any money.

b)      Florida Coastal's reported employment placement rates and salary information barely dipped following the aftermath of the "Great Recession," as the placement rates for the class of 2008 was an impressive 95 percent and 90 percent in 2009.  With legal jobs becoming increasingly scarce, Florida Coastal continued to claim that the majority of its graduates are gainfully employed.

c)      Only 23 percent of Florida Coastal's 2010 class and 27.5 percent of its 2011 class supplied salary information which suggests that the school's true employment rate for those periods was far below 50 percent.

3

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

d)      As set forth below, the employment and salary data reported by Florida Coastal are at odds with employment statistics reported by NALP, to wit: Florida claims to have exceeded the 40% national average for employment placement.

6.      Accordingly, Plaintiffs assert the following claim under the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. Plaintiffs seek damages and equitable relief on behalf of the Class (as defined in paragraph 45 herein), which includes but is not limited to the following: refunding and reimbursing current and former students for partial tuition paid to Florida Coastal; an order enjoining Florida Coastal from continuing to market its false and inaccurate employment data and salary information; an order requiring that Florida Coastal retain a third party to independently audit all employment and salary data; costs and expenses, including attorneys' and experts' fees; and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiffs and the class.

## PROCEDURAL HISTORY

7.      This case was originally filed with the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "Florida State Court"). Defendant is headquartered in Florida and has systematically and continually conducted business throughout the State of Florida.

8.      Defendant removed this action to Federal Court on February 27, 2012, and on March 19, 2012, Plaintiffs filed their objections to the removal of this case to Federal District Court and moved to remand. On March 29, 2013, District Judge Marcia Cooke entered a docket order that denied Plaintiffs' Motion for Remand (ECF 45).

4

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

9.      Also on March 29, 2013, District Judge Cooke entered a docket order that denied Florida Coastal's Motion to Dismiss Complaint and transferred the action to the Middle District of Florida (ECF 6) and another docket order denying Plaintiffs' Motion for Leave to Amend Complaint as moot. (ECF 47).

10.     On September 30, 2014, the Honorable Marcia G. Cooke of the United States District Court for the Southern District of Florida entered an order transferring the case to this Court in the Middle District of Florida.  (ECF 54).

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).   The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action in which members of the putative class, upon information and belief, reside in all fifty states.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District and because Defendant:

        a.      is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, and sale of its product in this District;

        b.      performs substantial business in this District; and

        c.      is subject to personal jurisdiction in this District.

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

**PARTIES**

I.   **Plaintiffs**

13.     Taylor Casey is a practicing attorney residing in Jacksonville, Florida who is currently a member in good standing of the Florida Bar after graduating from Florida Coastal in 2010.  After graduating in the top 13 percent of his class, Mr. Casey was unable find full-time, permanent legal employment.  In February 2011, he opened up his own law firm, which he currently still operates.

14.     Lieutenant Audra Awai lives in Washington State and is currently on active duty in the United States Army.  Lieutenant Awai graduated from Florida Coastal in 2008.  Following her graduation, Lieutenant Awai, discouraged by her dim job prospects in the legal sector, did not even bother sitting for a bar exam and instead joined the United States Army.

15.     Clifford Klein is a practicing attorney in Miami, Florida who is currently a member in good standing of the Florida Bar.  Mr. Klein graduated from Florida Coastal in 2010.

16.     Joycelyn Stinson graduated from Florida Coastal in 2011.  Following her graduation from law school, Ms. Stinson moved to Maryland.

17.     Melissa Shipman is a practicing attorney in Tennessee who is a member in good standing of both the Tennessee and Florida Bars.  Following her graduation from law school, Ms. Shipman was unable to secure full-time, permanent employment, and was compelled to establish and operate her own law firm.

18.     Amy Kisz is a practicing attorney in North Carolina who is currently a member in good standing of both the North Carolina and Florida Bars. Ms. Kisz graduated from Florida Coastal in 2010.  Following her graduation from law school, Ms. Kisz was unable to secure full-

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

time, permanent employment, and was compelled to accept part-time, temporary positions doing mostly document review.

19.     Christopher Wickersham Jr. is a practicing attorney in Jacksonville, Florida who is currently a member in good standing of the Florida Bar. Mr. Wickersham graduated from Florida Coastal in December 2009.  Following his graduation from law school, Mr. Wickersham, after passing the Florida Bar Exam on his first try, was initially unable to obtain any type of gainful legal employment and had no option other than opening and operating his own firm, which he owned and operated for several years.

## FACTUAL ALLEGATIONS

### I.     Background Information

20.     Founded in 1996 and accredited by the ABA in 2002, Florida Coastal is currently owned and operated by InfiLaw Corp. ("InfiLaw"), which is a consortium of three for-profit law schools, including the Phoenix School of Law in Phoenix, Arizona and the Charlotte School of Law in Charlotte, North Carolina.  InfiLaw, in turn, is owned and operated by Sterling Partners, which is a Chicago private equity firm with nearly $4 billion under management and investments in 56 companies across a variety of industries, including education, direct marketing, healthcare, business services and specialty manufacturing and distribution.

21.     For the 2011-2012 academic year, the school enrolled over 1,750 students, including 1,702 full-time students and 51 part-time students, its size having risen dramatically over the past decade.  Florida Coastal is currently one of the largest law schools in the country. Following its purchase by Sterling Partners in 2004, the school's enrollment jumped

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

immediately, from 449 first-year students enrolling in 2005, to 638 enrolling in 2007 to a record 722 enrolling in 2010.

22.     According to *US News*, Florida Coastal has some of the lowest admissions standards of any accredited or provisionally accredited law school.  In 2011 it accepted approximately 66 percent of all applicants and in 2010 it accepted 68 percent of all applicants, some of the highest acceptance rates of any law school, while its median LSAT score in 2011 was 147 and 149 in 2010 and its median GPA in 2011 was 3.08 and 3.14 in 2010, figures that place Florida Coastal within the bottom five percent of all accredited law schools.  For the entering classes of 2013 and 2012 the median LSAT scores were 144 and 146 respectively, and the median GPA for those years were 2.97 and 3.10.

23.     Yet despite its relatively lax admissions standards, remaining enrolled in Florida Coastal is quite difficult, as the school has, comparatively speaking, poor retention rates.  For the academic year 2009, the attrition rate for first-year students was 20.1 percent, while the attrition rate for second-year students was 8.3 percent, meaning that nearly 30 percent of students who enrolled at Florida Coastal failed to reach their third-year at the school. For the class entering in 2011, the attrition rate was 25.5 percent, while for the class entering in 2012, the attrition rate was 30.5 percent.

24.     At all relevant times, Florida Coastal's annual tuition has ranged between $23,410.00 in 2005 to its current tuition of $36,960.00, a roughly 50 percent increase that well exceeds the rate of inflation.  Accounting for room and board and other living expenses, which are estimated to be at least $20,000.00, if not more, the total annual cost for attending Florida Coastal is nearly $60,000.00.

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

25.     According to *US News*, in 2010 Florida Coastal students graduated on average with *$120,410* in debt, with 91 percent of them taking out loans to attend the school, while in 2011 Florida Coastal students graduated on average with *$134,355* in debt, with 92 percent of them taking out loans to attend the school. For the classes of 2012 and 2013 the numbers increase, with 2012 graduates graduating on average with *$143,111* in debt, with 92.2 percent of them taking out loans, while 2013 graduates graduated on average with *$150,360* in debt, with 91 percent of them taking out loans.

26.     Florida Coastal is accredited by the ABA's Section of Legal Education and Admissions to the Bar.  As mandated by Section 509(a) of the ABA's 2010-2011 Standards for Approval of Law Schools ("Section 509(a)"), an accredited law school must "publish basic consumer information" in a "fair and accurate manner reflective of actual practice."  As of now and throughout the relevant period for class ("Class Period"), law schools would satisfy this criterion by reporting jobs that are temporary or part-time or have absolutely nothing to do with obtaining a JD degree as "employment."

27.     Florida Coastal publishes its employment statistics on its website under the "Career Services" tab.  In posting the data, the school stated that its career services department

> …enjoys a first-rate staff that stands ready to guide you along your own unique career path.  We will assist you with all phases of your job search and professional development.  From personalized career counseling to on-campus interviewing programs, our office will facilitate your transition from law school to legal practice.  We pride ourselves in developing strong working relationships with our students that continue long after graduation.

9

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

## II.     Defendant' Misrepresentation

28.     Florida Coastal posts the employment data and salary information for each graduating class.  The school obtains this information through job surveys that it sends out to all recent graduates, and, consequently, this information is unaudited, unverified and self-reported. For example, between 2008 and 2010, the school posted the employment data for the Class of 2007, which claimed that the employment rate for graduates within nine months of graduation was an impressive 96.4 percent, a number that rivals those of much higher ranked, top-tier schools, such as the University of Florida, which had a 95.9 percent placement rate for the class of 2007.  Florida Coastal's employment data did not disclose the percentage of graduates who were employed in jobs that were not either temporary, part-time, voluntary, or JD required/JD preferred, and did not disclose the percentage of graduates who actually reported salary information.

29.     Upon information and belief, the school also posted the employment data and salary information for the classes of 2004, 2005, 2006, and 2009, reporting placement rates of 92 percent for the class of 2004, 91 percent for the class of 2005, 88 percent for the class of 2006, and 90 percent for the class of 2009.

30.     For the class of 2010, whose employment data was initially posted in July 2011, approximately 80 percent of the class was employed nine months after graduation, including 38 percent allegedly working in private practice, 17 percent in "business," 10 percent in government, 22.5 percent in public interest, four percent in judicial clerkships, three percent in "academic" and four percent in "unknown."  Florida Coastal's data listed a scant five percent as "seeking employment," with an additional three percent who were unemployed and "not seeking

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

employment," while 82 percent of employed graduates had jobs that were either JD required or JD preferred.   The school also disclosed that only 29 percent of employed students -- or 23 percent of the entire class -- had reported any type of salary information, with an average starting salary of $48,615, including $51,981 for those in private practice.

31.    Beginning in April 2012, the school began posting an employment report for the class of 2011 which paints a far different picture as to the employment opportunities for Florida Coastal graduates than the previous reports issued throughout the Class period.   Specifically, Florida Coastal now discloses that only 38.6 percent of the class – i.e. 174 out of 451 graduates – are in full-time, JD-required positions, while only 44.3 percent of the class have obtained full-time JD-required/preferred positions.   The school further discloses that a mere 124 graduates or 27.5 percent of the class have reported any type of salary information, including 33 percent of those in private practice, 34 percent in "business," 72 percent in government and 17 percent in public interest.

### A.    Disseminating False Information to Third Parties

32.    The school also disseminates employment data and salary information to other sources that are readily available to prospective students.   In general, there are three primary sources that Florida Coastal--along with all other accredited law schools--provides information, to wit:   *US News,* the ABA, and the National Association of Law Placement ("NALP"). However, the *US News* and the ABA simply require law schools to report an overall employment number, and do not require schools to distinguish between part-time and full-time jobs, temporary and permanent employment, or JD required/preferred and non-JD-required/preferred positions.

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

33.     Specifically, based on data supplied by Florida Coastal, the ABA reported that 94 percent of 2004 Florida Coastal graduates,  90 percent of 2005 graduates, 90 percent of 2006 graduates, 87 percent of 2007 graduates, 95 percent of 2008 graduates, and 91.4 percent of 2009 graduates, secured employment within nine months of graduation, while the *US News* reported that 96 percent of 2003 graduates, 92 percent of 2004 graduates, 91 percent of 2005 graduates, 88 percent of 2006 graduates, 96 percent of 2007 graduates, 95.4 percent of 2008 graduates, and 81.4 percent of 2009 graduates secured employment within nine months of graduation.

34.     As for NALP, law schools when responding to its questionnaire must not simply report an overall employment number, but specifically break down the exact type of employment their graduates have obtained, differentiating between part-time and full-time jobs or whether a position requires or prefers a JD degree.  Unfortunately, NALP does not either publish or make available to the public these questionnaires, and instead compiles and tabulates their data into a single document which contains aggregate statistical information from all ABA-approved law schools.

35.     Simply put, by virtue of Florida Coastal's participation in NALP's annual employment survey, Florida Coastal has presented highly misleading data to prospective and current students that grossly inflate post-graduation employment rates while depicting an unrealistic, if not entirely inaccurate, picture of bountiful career prospects that do not exist.

**III.     Inflating Employment Data**

36.     In reality, the employment data reported and marketed by Florida Coastal during the Class Period bears little resemblance to the actual experiences and dim employment opportunities encountered by its graduates.  Based on interviews with former students and other

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

investigatory work, Plaintiffs believe that perhaps fewer than *30-40 percent* (if not even fewer) of Florida Coastal graduates throughout the Class Period secured full-time, permanent employment for which a JD degree is required or preferred within nine months of graduating. Further, the majority of them worked in either part-time or temporary or volunteer positions, while few Florida Coastal graduates earned anything near the reported mean/median salaries.

### A.    <u>Inflating Placement Rates</u>

37.    The alleged placement rates are grossly inflated because:

a)    The jobs reported included any type of employment, including jobs that had absolutely nothing to do with the use of a JD degree (e.g., a graduate could be working as a barista in Starbucks) and would be deemed employed and working in "business," even though such employment was clearly temporary in nature and obviously did not require or prefer a JD degree.

b)    The jobs reported included positions that were part-time, temporary or voluntary in nature, such as contract attorneys working on temporary document review assignments or graduates who worked in non-legal jobs and volunteered in government offices to gain at least some practical experience.

c)    The jobs reported included "research assistant" or "make-work," temporary positions funded by the school, so as to classify unemployed graduates as "employed" in various employment surveys.

d)    The jobs reported included graduates who were employed at any point within nine months of the gradate survey, even if they were not employed as of the reporting date for the survey.

Concepción Martínez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

e)        The jobs reported included graduates who had been forced to start "solo" practices due to their inability to secure any type of employment and had earned little or no money.

f)        Florida Coastal, tabulated, calculated and tallied the raw data inputted in the job surveys filled out by recent graduates in a shoddy manner, and omitted or ignored critical statistical data that would substantially lower both placement rates and salary information. Florida Coastal thereby violated the ABA's Section 509(a) disclosure requirements.

38.        The school further disclosed the same flawed employment data to various third-party publications and data clearinghouses such as the ABA and *US News*, whose figures are riddled with the same dubious calculations and deliberate omissions as found in the employment information posted and marketed by Florida Coastal on its website and brochures during the Class Period.

39.        In addition to the reasons previously stated, Florida Coastal's representations about its placement rates are demonstrably false for the following reasons:

a)        As detailed by a study by the consulting company Economic Modeling Specialist, Inc. ("EMSI"), which was published by *The New York Times* in June 2011,  the legal employment market was highly oversaturated, with every state besides Nebraska and Wisconsin producing more attorneys than they needed for the foreseeable future.  Across the country, there were twice as many people who passed the bar in 2009 -- 53,508 -- as there were job openings -- 26,239. In Florida the numbers were particularly daunting, with 2,782 people having passed the bar in 2009, even though the state was estimated to only need 2,027 new lawyers for each year through 2015, leaving an annual surplus of 755 attorneys. The Bureau of Labor Statistics

14

projected the creation of 28,000 new lawyer positions annually, well below the roughly 43,000 freshly-minted JDs pumped out in 2009 and 44,000 pumped out in 2010.

b)      As set forth in painstaking detail by University of Colorado Law Professor Paul Campos in an April 25, 2011 article in *The New Republic*, which is based on exhaustive analysis of NALP's 2009 Employment Report, the true percentage of law school graduates nationally who have obtained full-time, permanent legal employment could be lower than 40 percent, and most likely this is lower for Florida Coastal, with its lenient admissions standards, fourth-tier ranking by *US News* and location in a highly-saturated legal market.

## B.     Inflating Salaries

40.    Florida Coastal inflated its graduates' reported median salaries, by calculating them based on a small, deliberately selected subset of compensated graduates who reported their salary information, and not on a broad, statistically meaningful representation of its graduates. Florida Coastal chose a few graduates in high-paying jobs to respond to its job survey while ignoring all other graduates. This had the effect of ensuring that  graduates with salaries in legal jobs were disproportionately overrepresented in its reported salary information, and that underemployed or unemployed graduates were disproportionately underrepresented.

41.    Florida Coastal's representations about its reported median salaries are demonstrably false for the following reasons:

a)      For the class of 2011, the school now concedes that only 27.5 percent of the class have reported any type of salary information, including 33 percent of those in private practice, 34 percent in "business," 72 percent in government and 17 percent in public interest. Likewise, for the class of 2010, the school discloses that only 29 percent of all employed

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

students or 23 percent of the entire class have reported any type of salary information, while failing to disclose the exact percentages of graduates for each particular job category who reported salary information.

b)      Upon Information and belief, for all other employment reports published before July 2011, Florida Coastal failed to disclose the overall percentage of graduates who reported salary information.

## IV.   Public Criticisms of Law Schools

42.     Increased media scrutiny beginning mostly in 2011 has shed light on the forgoing issues.  Many roundly condemn law schools for the deceptive ways they report and market employment data.  Notably, none of this information was available to Plaintiffs when they enrolled and decided to remain enrolled in Florida Coastal.

43.     Such condemnation and criticism includes:

a)      Four letters sent by Senator Barbara Boxer to the ABA and/or the Department of Education,  dated between **March 31, 2011** and **October 13, 2011**, decrying the systemic lack of transparency in the reporting of employment data by law schools to prospective and current students.

b)      Two letters sent by Senator Charles Grasserly to the ABA, dated **July 11** and **August 8, 2011**, that referenced the questionable practices employed by law schools when offering merit-based scholarships (i.e. they extended substantially more scholarships than they could possibly renew), the supersaturated job market facing new graduates, and the increased debt burden assumed by law school students as raising serious concerns whether tax payers will

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

ultimately be on the hook for the billions of dollars in federally-backed loans that ultimately flow into law school coffers each year.

c)      A letter from Brian Kelly, the editor-in-chief of *U.S. News*, to law school deans, published in **March 2011**, which acidly notes  that the "entire law school sector is perceived to be less than candid" when reporting employment data, and that many schools appear "not to treat the ABA reporting rules with the seriousness one would assume."

d)      Proposed legislation sent by a coalition of 55 law school student body presidents to Congress, published in **May 2011**,  that would, among other things, create new reporting standards for employment data, require law schools to submit annual employment reports to the Department of Education, and empower the DOE to audit these reports.

e)      Two separate op-eds authored by the 2010-11 and 2011-12 California Bar Presidents that were published in the California Bar Journal in **May 2010** and **March 2011**, imploring law school deans to adopt more rigorous reporting standards by disclosing the type of detailed employment and salary information that would allow students to get a more realistic picture of their post-graduate financial situation (attaching Ex. 10).

44.     It is only recently that the ABA has adopted measures that would expressly require law schools to report their true post-graduate employment rate, by disclosing the type of information Plaintiffs are seeking here: the exact percentage of graduates who have obtained permanent, full-time legal employment.  Law schools will be required to break down their employment data so as to indicate whether a position is full-time or part-time, permanent or temporary, funded by the law school or an affiliated university, and whether bar passage or a JD degree is required or preferred.  Unfortunately, these changes come too late for Plaintiffs and

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

Class members since they have already taken on tens of thousands of dollars in non-dischargeable debt based on Florida Coastal's deceptive and misleading statements.

## CLASS ACTION ALLEGATIONS

45.     This action is brought and may properly be maintained as a class action pursuant to Rule 23(b )(2) and (b )(3) of the Federal Rule of Civil Procedure. Plaintiffs bring this action, on behalf of themselves and all other similarly situated, as representative members of the following proposed class (the "Class"):

**All persons who enrolled in the Florida Coastal School of Law prior to August 2012.**

46.     Excluded from the Class are Defendant, TCLS, its employees, officers and directors, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

47.     For the foregoing reasons, this action fulfills the standards and requirements as outlined in Rule 23(b)(2) and (b)(3) of the Federal Rule of Civil Procedure.

## A.     The Parties are Numerous and Easily Ascertainable

48.     The proposed Class is so numerous that it is manifestly impracticable to bring them all before the court.  Though the exact number and identities of the Class is unknown at this time, they can be ascertained through appropriate discovery, and likely contain at least 3,000 people, as over 400 students graduate from Florida Coastal each year.  The number and identities of other Class members may be determined from Defendant's records and files, and potential Class members may easily be notified about the pendency of this action.

**B.      Common Questions of Law and Facts Predominate**

49.      This action presents questions of law and facts common to the Class, including, but not limited to, the following:

a)      Whether Defendant is engaged in deceptive, misleading, unfair, fraudulent and/or otherwise unlawful practices through their non-disclosure of material facts and affirmative misleading statements regarding post-graduate employment data and salary information, and by specifically representing that approximately 80-95 percent of its graduates secure employment within nine months of graduation;

b)      Whether Defendant knew the true and real percentage of recent graduates who secured full-time, permanent employment for which a JD degree is required or preferred and were, therefore, gainfully employed, and if that number was substantially lower than 80-95 percent;

c)      Whether Defendant's conduct violated Florida Unfair and Deceptive Trade Practices Act, as alleged herein;

d)      Whether Plaintiffs and Class members are entitled to recover actual damages as a result of the actions alleged herein;

e)      Whether Plaintiffs and members of the Class are entitled to recover restitution of tuition monies remitted to Defendant as a result of the actions alleged herein;

f)      Whether Plaintiffs and members of the Class are entitled to ancillary relief, including the disgorgement of unearned profits, as a result of the actions alleged herein;

g)      Whether Plaintiffs and Class members of the Class are entitled to recover punitive damages as a result of the actions alleged herein;

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

h)      Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of this suit;

i)      Whether Defendant should be forced to retain independent, non-related third-parties to audit and verify its post-graduate employment data and salary information; and

j)      Whether Defendant should be enjoined from continuing to make false and misleading representations and omissions regarding its post-graduate employment data and salary information.

### C.      <u>Plaintiffs' Claims Are Typical of the Class</u>

50.     Plaintiffs' claims are typical of the claims and of the members of the Class because they have all been damaged in the same manner and way as a result of Defendant's failure to disclose material facts and policies of misrepresentation and omissions.  Accordingly, the interests of the representative Plaintiffs are co-extensive with the interests of each Class member, and all have a common right of recovery based upon the same facts.

### D.      <u>The Class Representatives Can Adequately Represent the Class</u>

51.     Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and their interests do not conflict with the interests of the Class.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who are competent and experienced in the prosecution of class action litigation.

### E.      <u>A Class Action Provides a Substantial Benefit to the Courts and Litigants</u>

52.     Should individual Class members be required to bring separate actions, courts throughout Florida would be confronted by a multiplicity of lawsuits, thus burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

contrast to proceeding on a case-by-case basis, in which inconsistent results would magnify the delay and expense to all parties and the court system, this class action will present far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

53.     Members of the Class almost invariably lack the means to pay attorneys to prosecute their claims individually.   Given the complexity of the issues presented here, individual claims are not sufficiently sizeable to attract the interests of highly able and dedicated attorneys who will prosecute them on a contingency basis.   Only by aggregating claims can Plaintiffs gain the leverage necessary to pursue a just and global resolution of the issues raised in this Complaint.

54.     Plaintiffs, on behalf of themselves and the Class, pray for an order certifying the Class and appointing Plaintiffs and their counsel of record to represent the Class.

## VIOLATIONS OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, Fla. Stat. §§ 501.201, *et seq*.

55.     Defendant's actions constitute unlawful, unfair, deceptive and fraudulent practices as defined by Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201, et seq (the "Act"). The stated purpose of the Act is to "protect the consuming public ... from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla.Stat. §501.202(2).

56.     Plaintiff is a consumer as defined by Fla. Stat. §501.203.

57.     Defendant is engaged in trade or commerce within the meaning of the Act.  Fla. Stat. §501.204(1) which declares unlawful "[u]nfair methods of competition, unconscionable

21

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

58.    As part of its fraudulent marketing practices and recruitment program, Florida Coastal engaged in a pattern and practice of knowingly and intentionally making numerous false representations and omissions of material facts, with the intent to deceive and fraudulently induce reliance by Plaintiffs and the members of the Class.   These false representations and omissions were uniform and identical in nature, and include, without limitation, the following:

a)    Stating false placement rates during the recruitment and retention process, including that approximately 80-95 percent of Florida Coastal graduates secured employment within nine months of graduation;

b)    Manipulating post-graduate employment data, so as to give the appearance that the overwhelming majority of recent graduates secured full-time, permanent employment for which a JD degree is required or preferred;

c)    Grossly inflating the reported mean/median salaries earned by recent graduates;

d)    Disseminating false post-graduate employment data and salary information to various third-party data clearinghouses and publications, such as the ABA and *US News*;

e)    Making deceptive and misleading statements, representations and omissions concerning the pace at which recent graduates could obtain gainful employment in their chosen field; and

f)     Causing students to pay inflated tuition based on materially misleading statements, representations and omissions, including, specifically, that

22

approximately 80-95 percent of Florida Coastal graduates secure gainful employment.

59.     In general, Plaintiffs and members of the Class enrolled at Florida Coastal for the purpose of securing upon graduation full-time, permanent employment for which a JD degree is required or preferred.  Defendant's acts, practices and omissions, therefore, were material to Plaintiffs' decision to enroll and attend Florida Coastal, and further proximately caused Plaintiffs and other members of the Class to pay inflated tuition.

60.     Defendant's practices are unfair and deceptive because it caused Plaintiffs and the Class substantial harm, which is not outweighed by any countervailing benefits to consumers or competition, and is not an injury consumers themselves could have reasonably avoided.

61.     Defendant's acts and practices have misled and deceived the general public in the past, and will continue to mislead and deceive the general public into the future, by, among other things, causing them to apply to and enroll at Florida Coastal under false pretenses.

62.     Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendant to immediately cease these unfair business practices, as well as disgorgement and restitution to Plaintiffs of all revenue associated with Defendant's unfair practices, or such revenues as the Court may find equitable and just.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, pray for relief and judgment against Defendant Florida Coastal:

i)      For preliminary and injunctive relief enjoining Defendant, its agents, servants, employees and all persons acting in concert with them from continuing to engage

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

in their unlawful recruitment program and manipulation of post-graduate employment data and salary information, and all other unfair, unlawful and /or fraudulent business practices alleged above and that may yet be discovered in the prosecution of this action;

ii)     For certification of the Class;

iii)    For the partial restitution and disgorgement of tuition monies remitted to Florida Coastal, totaling $100 million, which is the difference between the inflated tuition paid by Class members based on the material misrepresentations that approximately 80-95 percent of graduates are employed within nine months of graduation and the true value of a Florida Coastal degree;

iv)    For damages;

v)     For punitive damages;

vi)    For an accounting by Defendant for any and all profits derived by them from the herein-alleged unlawful, unfair, and/or fraudulent conduct and/or business practices;

vii)   For injunctive relief ordering that Florida Coastal retain unrelated, independent third-parties to audit and verify post-graduate employment data and salary information;

viii)  For attorneys' fees and expenses pursuant to all applicable laws;

ix)     For prejudgment interest; and

x)      For such other and further relief as the Court may deem just and proper.

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial on all causes of action so triable.

                                             Respectfully submitted,

                                             s/ Elio F. Martinez, Jr.
                                             ELIO F. MARTINEZ, JR.
                                             Florida Bar No.: 501158
                                             CONCEPCION MARTINEZ & BELLIDO
                                             255 Aragon Ave. 2nd Floor
                                             Coral Gables, FL  33134
                                             Tel:  305-444-6669 / Fax: 305-444-3665
                                             emartinez@cfclaw.com
                                             mkennady@cfclaw.com

                                             -and-

                                             David Anziska, Esq.
                                             The Law Offices of David Anziska
                                             305 Broadway, 9th Fl.
                                             New York, NY 10007
                                             Phone (212) 822-1496; Fax: (212) 822-1437

                                             Jesse Strauss, Esq. *(Pro Hac Vice Pending)*
                                             Strauss Law, PLLC
                                             305 Broadway, 9th Fl.
                                             New York, NY 10007
                                             Phone (212) 822-1496; Fax (212) 822-1437

                                             *Counsel for Plaintiffs, individually*
                                             *and for all others similarly situated*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on November 26th, 2014, on all counsel or parties of record on the Service List below.

By:  <u>s/ Elio F. Martinez, Jr.</u>
ELIO F. MARTINEZ, JR.
Florida Bar No.: 501158

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

## SERVICE LIST

Taylor Casey, et al. v.  Florida Coastal School of Law
United States District Court, Southern District of Florida
Case No. 12-20785-CIV-MGC


Herman J. Russomanno, Esq.
Herman J. Russomanno, III, Esq.
RUSSOMANNO & BORRELLO, P.A.
Museum Tower, Penthouse 2800
150 West Flagler Street
Miami, Florida 33130

-and-

Michael J. Volpe, Esq. *(Pro Hac Vice)*
Edmund M . O'Toole, Esq. *(Pro Hac Vice)*
Michael C. Hartmere, Esq. *(Pro Hac Vice)*
Venable LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020

*Counsel for Defendant*
*Florida Coastal School of Law*

Concepción Martinez & Puente, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com