UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAYLOR CASEY, et al.,

    Plaintiffs,

v.                                                     Case No. 3:14-cv-1229-J-39PDB

FLORIDA COASTAL SCHOOL OF
LAW, INC.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on the Report and Recommendation [Doc. 85; Report] entered by the Honorable Patricia D. Barksdale, United States Magistrate Judge, on August 11, 2015. The Report addresses Defendant's Motion to Dismiss the Amended Complaint [Doc. 76; Motion]. After review of Defendant's Motion and Plaintiff's response thereto, the Magistrate Judge issued her Report in which she recommends that Defendant's Motion be granted. Following entry of the Magistrate Judge's Report, Plaintiffs timely filed their Objection to the Report [Doc. 86; Objection] to which Defendant provided a timely Response [Doc. 87; Response]. Accordingly, the matter is ripe for review.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district judge is not required to conduct a *de novo* review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). However, a district judge reviews legal

conclusions *de novo,* even in the absence of an objection. See Cooper–Houston v. Southern Ry., 37 F.3d 603, 604 (11th Cir. 1994).

I. **DISCUSSION**

The Magistrate Judge sets forth a detailed description of the background of this case, and the Court will not duplicate those efforts as Plaintiffs do not challenge any of the factual recitations.[1] However, Plaintiffs do challenge two of the Magistrate Judge's legal conclusions, specifically that: (1) Rule 9(b), Federal Rules of Civil Procedure ("Rule(s)") can apply to claims made pursuant to the Florida Deceptive Trade Practices Act, Fla. Stat. §§ 501.201-213 ("FDUPTA"); and (2) that Plaintiffs cannot state a plausible claim under FDUPTA.

A. **Application of Rule 9(b) to FDUPTA**

Rule 9(b) imposes a heightened pleading requirement, which demands that a party alleging "fraud or mistake . . . state with particularity the circumstances constituting fraud or mistake." As the Magistrate Judge noted, the Eleventh Circuit has not decided whether Rule 9(b) applies to a FDUPTA claim that is underpinned by allegations of fraud. (Report at 22). However, the Magistrate Judge carefully outlines the Eleventh Circuit's application of Rule 9(b) to claims other than fraud or mistake. (e.g., Id. (citing Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1051 (11th Cir. 2015) (applying Rule 9(b) to claims made pursuant the False Claims Act, 31 U.S.C. §§ 3729-33))). She reasons that the Eleventh Circuit's prior application of 9(b) to claims which are not for fraud, but which contain allegations of fraud, is reason to suspect that the Eleventh Circuit would

---

[1] Defendant will be referred to as Defendant or Florida Coastal.

endorse an extension of 9(b)'s application to FDUPTA claims containing allegations of fraud. The undersigned agrees.

Moreover, the Court finds persuasive the Seventh and Ninth Circuits' application of Rule 9(b) to Illinois and California claims, respectively, pursuant to consumer protection laws similar in nature to FDUPTA. See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc., 536 F.3d 663, 670 (7th Cir. 2008) ("Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).") (citation omitted).

In this case, Plaintiffs allege that Defendant's "actions constitute unlawful, unfair, deceptive and fraudulent practices. . . ." (Doc. 74 ¶ 55). More specifically, Plaintiffs allege that "[a]s part of [Florida Coastal's] fraudulent marketing practices and recruitment program, Florida Coastal engaged in a pattern and practice of knowingly and intentionally making numerous false representations and omissions of material facts, with the intent to deceive and fraudulently induce reliance by Plaintiffs . . . ." (Doc. 74. ¶ 58). With Plaintiff's "peppering" of Defendant's fraudulent conduct throughout the Amended Complaint to support its FDUPTA claim, the claim sounds in fraud and as such, must meet the heightened pleading requirement imposed by Rule 9(b).

### B. Plaintiffs' Claim under FDUPTA

FDUPTA was enacted with the purpose to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202. To establish a claim for damages under FDUPTA a plaintiff must show three elements: "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd., No. 10-22153-CIV, 2011 WL 4434891, at *5 (S.D. Fla. Sept. 23, 2011) (quoting KC Leisure, Inc. v. Haber, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008)).

Plaintiffs pointed to the following specific allegations as being sufficient to state a plausible claim under FDUPTA:

a) Stating false placement rates during the recruitment and retention process, including that approximately 80-95 percent of Florida Coastal graduates secured employment within nine months of graduation;

b) Manipulating post-graduate employment data, so as to give the appearance that the overwhelming majority of recent graduates secured full-time, permanent employment for which a JD degree is required or preferred;

c) Grossly inflating the reported mean/median salaries earned by recent graduates;

d) Disseminating false post-graduate employment data and salary information to various third-party data clearinghouses and publications, such as the ABA [American Bar Association] and *US News*;

e) Making deceptive and misleading statements, representations and omissions concerning the pace at which recent graduates could obtain gainful employment in their chosen field; and

f) Causing students to pay inflated tuition based on materially misleading statements, representations and omissions, including,

> specifically, that approximately 80-95 percent of Florida Coastal graduates secure gainful employment.

(Doc. 83 at 7-9 (quoting Doc. 74 ¶ 58)). It is clear that the Magistrate Judge took note of Plaintiffs' contentions, as she recited them verbatim in her Report. (Doc. 85 at 25-26). After considering the relevant case law, and Plaintiffs' Amended Complaint, including the allegations noted above, the Magistrate Judge concluded that Plaintiffs' allegations failed to state a claim.[2] That conclusion rests on the Magistrate Judge's finding that Defendant's alleged conduct failed to rise to the level of deceptive or unfair trade practice as contemplated by FDUPTA. The undersigned agrees for the reasons stated by the Magistrate Judge and writes only to briefly supplement her conclusion.

A claim of deceptive trade practice "requires proof that defendant's act would likely 'mislead the [objective] consumer acting reasonably in the circumstances.'"

---

[2] The Magistrate Judge found the allegation that Defendant purposefully sent its salary surveys only to graduates in high-paying jobs particularly troubling. (Doc. 85 n.17 at 35 (citing Doc. 74 ¶ 40)). However, Plaintiffs also claimed that "[Defendant] posts the . . . salary information for each graduating class. . . [and Defendant] obtains this information through job surveys that it sends out to all recent graduates . . . ." (Doc. 74 ¶ 28). The Magistrate Judge , relying on Response Oncology, Inc. v. MetraHealth Ins. Co., 978 F. Supp. 1052, 1058 (S.D. Fla. 1997) order clarified on reconsideration, No. 96-1772-CIV, 1997 WL 33123678 (S.D. Fla. Nov. 6, 1997), found that these statements are internally inconsistent and need not be considered in deciding the Motion to Dismiss. (Doc. 85 n.17 at 35).

Plaintiffs do not challenge the Magistrate Judge's decision to disregard their allegation that Defendant sent salary surveys to only those graduates in high-paying jobs. Furthermore, the Magistrate Judge's ruling is consistent with precedent in this district. See Anthony Sterling, M.D. v. Provident Life & Acc. Ins. Co., 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007) ("While courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive therefrom, they need not accept factual claims that are internally inconsistent . . . .") (internal quotations omitted). Accordingly, the undersigned will not disturb the Magistrate Judge's decision.

Democratic Republic of the Congo v. Air Capital Grp., LLC, No. 14-11243, 2015 WL 3619452, at *8 (11th Cir. June 11, 2015) (unpublished) (quoting PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003)). An unfair trade practice requires (1) substantial injury to the consumer; (2) "must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) must be an injury that consumers themselves could not reasonably have avoided." Porsche Cars N. Am., Inc. v. Diamond, 140 So. 3d 1090, 1096 (Fla. 2d DCA 2014) review denied, 157 So. 3d 1042 (Fla. 2014) (citation omitted).

The Court notes that Plaintiffs are consumers of a legal education. As such, they are college graduates and "[b]y anyone's definition . . . a sophisticated subset of education consumers, capable of sifting through data and weighing alternatives." Gomez-Jimenez v. New York Law Sch., 943 N.Y.S.2d 834, 843 (N.Y. Sup. Ct. 2012) aff'd, 103 A.D.3d 13, 956 N.Y.S.2d 54 (N.Y. App. Div. 2012). Plaintiffs do not allege that Defendant presented objectively false employment and salary data of Defendant's graduates. Rather, Plaintiffs contend that Defendant's presentation was misleading because (1) the employment data presented failed to distinguish between the types of employment Defendant's graduates obtained and (2) the salary data consisted only of those who responded to the school's surveys, which represented only a fraction of Defendant's graduates.[3]

Plaintiffs place much emphasis on the effect the employment rate reported by various news companies and Defendant's website played in misleading reasonable

---

[3] For example, Plaintiffs claim that only 23% of the class of 2009 reported salary data. (Doc. 74 ¶ 3(b)).

consumers, like Plaintiffs.[4] Yet, Plaintiffs also acknowledge that Defendant had some of the lowest admissions standards of accredited or provisionally accredited law schools in the nation. (Doc. 74 ¶ 22). Despite its low ranking, Plaintiffs allege that Defendant's Employment numbers rivaled "those of much higher ranked, top-tier schools, such as the University of Florida." (Doc. 74 ¶ 28). This would have been a red flag to a reasonable consumer in Plaintiffs' position, and should have caused the reasonable consumer to, at a minimum, seek out more nuanced information to allow for a meaningful comparison of law schools, including the types of employment graduates obtained. Such an inquiry was reasonably expected and could have prevented Plaintiffs' alleged injuries.[5] Therefore, Plaintiffs failed to state a plausible claim that Defendant's publishing of the employment data in the manner alleged would result in probable deception to a reasonable consumer, or that that the substantial injury alleged could not have been reasonably avoided.

On the point of Defendant's salary data presentation, Plaintiffs take issue with the manner in which Defendant reported the salary data of its employed graduates. Specifically, Plaintiffs allege that Defendant's "employment reports published before July 2011 . . . failed to disclose the overall percentage of graduates who reported salary information." (Doc. 74 ¶ 41(b)). Plaintiffs claim this was misleading because those who

---

[4] At the time of Plaintiffs' decision to attend school at Florida Coastal, Plaintiffs claim three sources of employment and salary data were available to them, namely: US News, the ABA, and the National Association of Law Placement ("NALP"). (Doc. 74 ¶ 32). At the time, only NALP required law schools to report on the specific types of employment their graduates obtain, but NALP published only the aggregate statistical information from all ABA-approved law schools. (Doc. 74 ¶ 34).

[5] For example, Plaintiffs do not claim Defendant refused to provide a more specific explanation of its employment statistics upon individual inquiry.

reported salary information were only a fraction of those that graduated from Florida Coastal and tended to be from high-earning graduates. (E.g., Doc. 74 ¶ 5(c)). While the Court agrees with Plaintiffs to the extent that Defendant's alleged salary data presentation was less than candid, it was unreasonable for Plaintiffs to assume that the salary information offered by Defendants was a true and accurate representation of all graduates. Indeed, unless Plaintiffs assumed that Defendant had a full-proof method of tracking each and every one of its graduates, Plaintiffs had reason to suspect that the salary data offered only a limited picture of the salaries actually earned by Florida Coastal graduates and further inquiry would be required. Accordingly, the Court finds that Plaintiffs failed to state a plausible claim that publishing the salary data in the manner alleged would result in probable deception to a reasonable consumer, or that the substantial injury alleged could not have been reasonably avoided.

Upon independent review of the file and for the reasons stated in the Magistrate Judge's Report, the Court will accept and adopt the factual and legal conclusions of the Magistrate Judge, as supplemented herein. Accordingly, it is hereby

**ORDERED:**

1. The Report and Recommendation [Doc. 85] of the Magistrate Judge is **ADOPTED** as supplemented, as the opinion of the Court.

2. Defendant's Motion to Dismiss the Amended Complaint [Doc. 76] is **GRANTED**.

3. This case is **DISMISSED with prejudice.** The Clerk of Court shall enter judgment in favor of Defendant and close the case.

**DONE** and **ORDERED** in Jacksonville, Florida this 28th day of September, 2015.

BRIAN J. DAVIS
United States District Judge

mw
Copies furnished to:

The Honorable Patricia D. Barksdale
United States Magistrate Judge

Counsel of Record